IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **RICHARD JOHN QUILLEN,** | * | |
| | * | |
| **Plaintiff** | * | |
| | * | |
| v. | * | Civil Case No. WDQ-14-3701 |
| | * | |
| **COMMISSIONER, SOCIAL SECURITY,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. [ECF Nos. 11, 12]. I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). For the reasons set forth below, I recommend that the Court grant the Commissioner's motion, deny Mr. Quillen's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

Mr. Quillen protectively filed an application for Disability Insurance Benefits ("DIB") on September 21, 2010. (Tr. 180, 278-81). Mr. Quillen alleged a disability onset date of May 10, 2010. (Tr. 278). His application was denied initially on April 7, 2011, and on reconsideration on September 23, 2011. (Tr. 197-201, 205-11). An Administrative Law Judge ("ALJ") held hearings on November 6, 2012, April 4, 2013, and August 27, 2013, at which Mr. Quillen was

represented by counsel. (Tr. 66-142). Following the hearings, the ALJ determined that Mr. Quillen was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 41-65). The Appeals Council denied Mr. Quillen's request for review, (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Quillen suffered from the severe impairments of dilated cardiomyopathy, recurrent atrial fibrillation, obesity, and depression. (Tr. 46). Despite these impairments, the ALJ determined that Mr. Quillen retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b), with lifting up to 10 pounds continuously and 50 pounds occasionally, carrying up to 10 pounds continuously, up to 20 pounds frequently, and up to 50 pounds occasionally, sitting two hours at one time or eight hours total in an eight hour workday, standing for three hours at a time or eight hours total in an eight hour workday, and walking for two hours at one time or four hours total in an eight hour workday. The claimant has no limitations in use of his hands or feet or in reaching or pushing/pulling. The claimant could frequently climb ramps and stairs and balance, occasionally climb ladders, ropes, or scaffolds, and continuously crouch, crawl, kneel and stoop. The claimant could have occasional exposure to heights, dust, odors, fumes, and pulmonary irritants as well as temperature extremes, and frequent exposure to machinery. Additionally, the claimant could perform, simple, unskilled work that is not at a production pace, meaning paid by the piece or on an assembly line, work with only occasional contact with coworkers and the general public and work that is essentially isolated, with only occasional supervision. The claimant could perform low stress work, defined as only occasional changes in the work setting and only occasional need to make decisions or use judgment.

(Tr. 49-50). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Quillen could perform jobs existing in significant numbers in the national economy and that, therefore, he was not disabled. (Tr. 55-56).

## II. ANALYSIS

On appeal, Mr. Quillen raises two arguments concerning the ALJ's explanation in support of her RFC assessment: (1) that the ALJ erred in evaluating the medical opinion

2

evidence of record; and (2) that the ALJ erred in evaluating his credibility. Both arguments lack merit and are addressed below.

Mr. Quillen first argues that the opinions from his treating psychiatrist, Dr. Boschulte,[1] and his treating therapist, Mr. Collins, were improperly discounted by the ALJ. The Fourth Circuit set forth parameters for evaluating medical opinions of treating physicians in *Craig*, 76 F.3d at 590, which were later refined by amendments to 20 C.F.R. § 404.1527. *See Pitman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). When a medical opinion is from a "treating source," it is given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). If a treating source's medical opinion is not assigned controlling weight, however, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

In support of his argument, Mr. Quillen first references the symptoms noted within the opinions. Pl's Mem. 21-22. However, the ALJ did not discount the opinions based on the insufficiency of the explanation set forth therein; rather, the ALJ determined that the opinions (including the explanations) were contradicted by the contemporaneous treatment notes of both sources. (Tr. 54). In support of the ALJ's assignment of weight, he referenced his earlier

---

[1] Mr. Quillen also suggests that the ALJ erred by failing to articulate the specific amount of weight she accorded Dr. Boschulte's opinion. *See* (Tr. 54) (specifying that the ALJ "does not give his opinion controlling weight" as it is "not well supported by medical signs and laboratory findings and is inconsistent with his detailed, contemporaneous treatment records," and "not supported by the medical evidence or consistent with the record as a whole"). However, the fact that the ALJ's statements concerning Dr. Boschulte's opinion mirror her statements concerning Mr. Collins's opinion in many critical respects allows me to discern that the ALJ likely assigned Dr. Boschulte's opinion no significant weight, and renders harmless any error in the ALJ's failure to explicitly articulate that assignment.

summary of Dr. Boschulte's and Mr. Collins's treatment notes, which documented numerous reports by Mr. Quillen that his medications were working well with no side effects, and that he was feeling better mentally, doing well, and sleeping better. (Tr. 52). The ALJ's summary also noted statements by Dr. Boschulte that Mr. Quillen was less depressed and that his mood and affect was happy. *Id.* Finally, the ALJ noted multiple mental status examinations in which Mr. Quillen exhibited normal eye contact and speech and goal directed thought flow. *Id.*

In support of his argument, Mr. Quillen also references excerpts from Dr. Boschulte's and Mr. Collins's treatment notes that he claims substantiate their opinions. Pl.'s Mem. 22. However, Mr. Quillen's argument essentially asks the Court to re-weigh the medical evidence, which exceeds its authority. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In addition to the instances in Dr. Boschulte's and Mr. Collins's treatment notes documenting improvement in Mr. Quillen's symptoms, the ALJ's summary also noted occasions upon which Dr. Boschulte described Mr. Quillen as depressed and isolated. (Tr. 52). A review of the record indicates that the severity of Mr. Quillen's symptoms, as reflected by Dr. Boschulte's and Mr. Collins's treatment notes, fluctuated. The ALJ's summary thus accurately set forth the gist of those treatment notes—they document both periods of improvement and instances of more severe symptoms. It is apparent from the ALJ's opinion, however, that she ultimately determined that the weight of Dr. Boschulte's and Mr. Collins's treatment notes did not support their opinions. The ALJ's consideration of those opinions was consistent with 20 C.F.R. § 404.1527, and the ALJ provided substantial evidence in support of her determination.

Mr. Quillen also generally takes issue with the ALJ's consideration of his activities of daily living ("ADLs") in discounting Dr. Boschulte's and Mr. Collins's opinions. Mr. Quillen characterizes his ADLs as "sporadic." Pl.'s Mem. 22. However, the ALJ's summary of Mr. Quillen's ADLs reflects activities and responsibilities that greatly exceed the occasional chores

and self-care that other courts have found to be not inconsistent with disability. In this case, Mr. Quillen engaged in a variety of social activities, including going to church twice a week, bowling once a week, and fishing, which are indeed inconsistent with Dr. Boschulte's and Mr. Collins's opinions regarding Mr. Quillen's social limitations and isolation. *Compare* (Tr. 118-19, 359, 377, 1103-06, 1273, 1407), *with* (Tr. 697, 700, 821, 1442).

Mr. Quillen's argument regarding his GAF scores is likewise unpersuasive. While nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record, it is well established that GAF scores are not determinative of disability. *See, e.g., Davis v. Astrue*, Case No. JKS-09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010); *Kozel v. Astrue*, No. JKS-10-2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012). Although the ALJ only mentioned one GAF score assigned to Mr. Quillen, her thorough summary of the other medical evidence in the record provided substantial evidence supporting her assessment of Dr. Boschulte's and Mr. Collins's opinions.

Mr. Quillen also argues that the ALJ erred in evaluating the opinions of Dr. Heda, his treating cardiologist, and Dr. Satyal, his treating primary care physician. The ALJ explicitly stated that she assigned Dr. Heda's opinion "limited weight" because "it is not supported by the medical evidence or consistent with the record as a whole." (Tr. 53). Specifically, the ALJ noted that Dr. Heda's opinion was inconsistent with "contemporaneous treatment records . . . showing that the claimant's condition has been stable since he underwent implantation of the cardiac pacemaker." (Tr. 54). Similarly, the ALJ assigned Dr. Satyal's opinion "little weight" because "it is not well supported by medical signs and laboratory findings and is inconsistent with detailed treatment records." *Id.* The ALJ explained that "[t]reatment records from Dr. Heda as well as Dr. Boschulte document improvement in the claimant's symptoms following his pacemaker implantation and with his current psychotropic medications and counseling," and that

5

Mr. Quillen himself admitted "that he is able to lift up to 30 pounds." *Id.* The ALJ's assignment of weight to both opinions thus turned on the supportability of the opinions and the opinions' consistency with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

Aside from his conclusory assertion that Dr. Heda and Dr. Satyal "provided support for their opinions," and that their "findings are confirmed by the underlying record and testing," Mr. Quillen has not identified any specific evidence that contradicts the ALJ's conclusions regarding the opinions' supportability or consistency. Pl.'s Mem. 27. Although the ALJ did not summarize Dr. Satyal's treatment notes at length, they consistently indicate normal cardiovascular exams and normal attention span and ability to concentrate, which is patently inconsistent with Dr. Satyal's opinion. *Compare* (Tr. 799-812) *with* (Tr. 775-782). Moreover, on the one occasion that Mr. Quillen's cardiovascular exam revealed an "irregularly irregular" auscultation rhythm, he presented "feel[ing] well with no complaints," which undermines claims that the symptoms of his atrial fibrillation are consistently and significantly limiting. *See* (Tr. 813); *see also* (Tr. 1244, 1247, 1256) ("General health: feels well with no complaints."). Dr. Satyal's recommendation on January 14, 2013, that Mr. Quillen should discuss "enrolling in cardiac rehab program which would help him get regular exercise and help him lose some weight," is equally inconsistent with the exertional limitations to which he opined. (Tr. 1257). Contemporaneous treatment notes from Dr. Baral also regularly indicate normal cardiovascular examinations—both prior to and after the implantation of Mr. Quillen's pacemaker. *See e.g.*, (Tr. 1296-1305). The record contains very few treatment notes authored by Dr. Heda, however, the evidence reviewed above is equally inconsistent with his opinion, which includes many limitations even more severe than Dr. Satyal's. As noted above, Mr. Quillen has not identified any evidence undermining the ALJ's evaluation of Dr. Heda's and Dr. Satyal's opinions, and I

find that the medical evidence substantiates the ALJ's conclusion that those opinions are unsupported and inconsistent with the record.

Finally, I note that State agency consultants are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). When an ALJ considers the findings of a State agency consultant, the ALJ must evaluate the findings using the same factors applicable to other medical opinion evidence, including the specialty and expertise of the consultant, the supporting evidence in the case record, supporting explanations the consultant provides, and any other relevant factors. *Id.* In this case, after describing the substantial evidence undermining the opinions of Dr. Boschulte and Mr. Collins, the ALJ assigned "substantial weight" to the opinions of the State agency consultants, finding that the limitations set forth in those opinions were supported by the evidence of record. Mr. Quillen argues that the ALJ's evaluation of the State agency opinions was improper because a State agency consultant's opinion, by itself, cannot constitute substantial evidence in support of an ALJ's RFC assessment. Pl.'s Mem. 23 (citing *Smith v. Schweiker*, 795 F.2d 343, 348 (4th Cir. 1986) and *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). Mr. Quillen's argument is inapposite, however, because in this case the ALJ also supported her RFC assessment with an abundance of treatment notes, as well as the opinion of Dr. Lebeau, which she also assigned "considerable weight." Accordingly, the ALJ properly relied on the State agency consultant's opinions in formulating Mr. Quillen's RFC.

Next, Mr. Quillen argues that the ALJ provided an insufficient explanation in support of her determination that Mr. Quillen's subjective complaints about his symptoms were not entirely credible. The Fourth Circuit has developed a two-part test for evaluating a claimant's subjective complaints. *Craig*, 76 F.3d at 594. First, there must be objective medical evidence of a medical

impairment reasonably likely to cause the symptoms alleged by the claimant. *Id.* After the claimant meets this threshold obligation, the ALJ must evaluate "the intensity and persistence of the claimant's [symptoms], and the extent to which it affects her ability to work." *Id.* at 595. In this case, the ALJ determined that Mr. Quillen's impairments met the threshold obligation in that they "could reasonably be expected to cause his alleged symptoms," but that his statements "concerning the intensity, persistence and limiting effects" of his symptoms were not entirely credible. (Tr. 51). The ALJ explained that with respect to Mr. Quillen's cardiac condition, Dr. Lebeau opined that Mr. Quillen's performance on a 9 minute treadmill test "was indicative of the claimant being able to perform at least moderate to active work." *Id.* The ALJ also emphasized that "following the implementation of the cardiac pacemaker in December 2012, the claimant's condition stabilized." (Tr. 52). Finally, the ALJ noted that Mr. Quillen's ADLs were "inconsistent with his alleged functional limitations." (Tr. 53).

Mr. Quillen takes issue with the ALJ's consideration of his ADLs, which Mr. Quillen characterizes as "marginal," and of his stability after receiving a cardiac pacemaker in December 2012. Pl.'s Mem. 27-28. Mr. Quillen does not, however, identify why the ALJ's consideration of these factors was erroneous. Social Security regulations explicitly provide that both ADLs and treatment for symptoms are relevant considerations in determining a claimant's credibility. *See* 20 C.F.R. § 404.1529(c)(3). Notably, Mr. Quillen's stable status subsequent to receiving his pacemaker is not relevant to whether he was disabled between his alleged onset date and the date his pacemaker was installed. However, while Mr. Quillen's ADLs may have increased after his pacemaker installed, his adult function reports and treatment notes reveal that Mr. Quillen engaged in almost all of the ADLs cited by the ALJ both prior to and after his pacemaker was implanted in December 2012. *Compare* (Tr. 355-362) (May 2011 adult function report reflecting church appointments once or twice weekly, socializing with family and friends once or

twice weekly, taking out the trash and doing dishes for his mother, making sandwiches and microwaving meals, grocery shopping every couple of weeks, feeding a dog, and taking care of his personal hygiene) and (Tr. 1103-1106, 1121) (August to October 2012 treatment notes documenting regular bowling); *with* (Tr. 1140-1141) (January 2013 treatment notes documenting bowling and preparing meals) and (Tr. 1273-74, 1407) (March to April 2013 treatment notes documenting fishing trips and visiting for and caring for his mother). Moreover, Mr. Quillen ignores the other evidence that the ALJ cited in support of her credibility determination. In particular, the ALJ noted Dr. Lebeau's opinion. (Tr. 51). Dr. Lebeau reviewed objective testing from 2007, and found that the testing indicated that "at that time he would have been capable of vigorous work." (Tr. 1132) (citing (Tr. 652)). Dr. Lebeau noted that although time had passed since the testing and he "could not find similar later measurements," Mr. Quillen "should still be able to perform workloads of moderate intensity." (Tr. 1132). Dr. Lebeau's opinion was dated December 14, 2012, which was prior to the date Mr. Quillen's pacemaker was placed. In light of the foregoing, I find that the ALJ provided substantial evidence—pertaining to the entire relevant period—in support of her credibility determination.

## III. CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment [ECF No. 12];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 11];

3. the Court AFFIRM the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g); and

4. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**IV.   NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  July 24, 2015                                         /s/
                                                              Stephanie A. Gallagher
                                                              United States Magistrate Judge